# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 24, 2012 Session

## ADVANTAGE PERSONNEL CONSULTANTS, INC. v. TENNESSEE DEPARTMENT OF COMMERCE ET AL.

### Appeal from the Chancery Court for Davidson County
No. 1018991     Claudia Bonnyman, Chancellor

No. M2011-02746-COA-R3-CV - Filed November 26, 2012

This matter involves a disagreement between an insurer and an insured over the proper classification of employees for the purpose of workers' compensation insurance. The decision of the Department of Commerce and Insurance was in favor of the insurer. The insured appealed to the trial court, which affirmed the Department. We find that the decision of the Department of Commerce and Insurance is supported by substantial and material evidence and affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Raymond Swen Leathers, Nashville, Tennessee, for the appellant, Advantage Personnel Consultants, Inc.

Scott J. Crosby, Memphis, Tennessee, for the appellee, Liberty Mutual Insurance Co.

## OPINION

This case is about the workers' compensation insurance policy issued by Liberty Mutual Insurance Company ("Liberty") to Advantage Personnel Consultants, Inc. ("Advantage") for the period from November 2005 to November 2006. Advantage is a staffing service that provides employees to clients, including TAG Manufacturing Company ("TAG"). TAG manufactures buckets used as attachments to backhoes and other equipment.

Workers are assigned to risk classifications for purposes of determining workers' compensation insurance premiums. Prior to the insurance policy year in question, the first

year of operation of the TAG plant, the classification for Advantage employees who worked for TAG was 3113 (manufacture of small tools). As a result of an audit, Liberty changed the classification to 3632 (machine shop, not otherwise classified). Advantage disputed the change of classification. Liberty's auditor, Mr. Welch, changed the classification to 3507 (construction or agricultural machinery mfg., not otherwise classified) during an interim audit of the policy. He revised the classification based on an audit he performed of a company using a similar process, C & P, and a discussion with Terry Wilt of TAG. Advantage still disagreed with the classification revision.

The National Council of Compensation Insurance ("NCCI")[1] conducted an inspection of TAG's plant, at Liberty's request, to determine the proper classification code for the workers. NCCI determined the proper classification code was 3507. After a review of the dispute, the Tennessee Workers' Compensation Insurance Plan Administrator accepted the proper classification as 3507.

Advantage appealed the classification as 3507 and maintained that, after further research, it had determined that the proper classification was 3620 (boilermaking), because that code described the manufacturing process and materials used at TAG.

A hearing was held on January 26, 2009, before an administrative law judge and the designee of the Commissioner of Commerce and Insurance. The first witness at the administrative hearing was Michael Fowler, Advantage's Operations Manager. He testified that Advantage sent out its employees to TAG and paid the workers' compensation premiums on them. He originally classified the work as 3113, because that is a tool-making code and backhoe buckets made by TAG are considered as tools. At the hearing, Fowler continued to challenge Liberty's view that the proper code was 3507, but maintained that the code should be 3620 (boilermaking) because the process for making a boiler involves rolling metal and welding—the same process TAG uses to make buckets. Fowler further testified that the 3507 classification (construction and agricultural machinery) was incorrect because it refers to "mechanized machinery," and the bucket mentioned in 3507 is part of a bigger machine.[2] Fowler summed up Advantage's position as follows:

> a bucket is a tool, and it is a tool because Caterpillar, the person that designed that type of product, describes it and named it a tool. It does not fall under 3507. It is not a piece of machinery. The code tells you to go to a code that

---

[1]NCCI developed the manual that lists the classifications.

[2]Advantage also supplied an affidavit of Terry Wilt, the vice president of TAG, which declared that the buckets manufactured by TAG were work tools and not pieces of machinery.

describes the operation. The operation says it fits under boilermaker, 3620, because of the process[,] of the way it's fabricated.

Michael Welch testified for Liberty. He worked for Liberty as a premium auditor, having performed in the neighborhood of 500 audits a year for 10 years. These audits involve examining payroll records of Liberty's policyholders to determine workers' compensation exposure and the proper classification codes. Welch originally assigned code 3632 to TAG's operations and later changed it to 3507 because, after conducting an audit of C & P, whose manufacturing process and products are very similar to TAG's, he learned that the governing classification code for C & P was 3507.[3] Before he changed the code as to TAG, he also spoke with Terry Wilt of TAG. He testified that a subsequent inspection and report by NCCI also determined that the proper classification was 3507.[4]

The final order, issued on October 1, 2010,[5] held that the proper classification code was 3507. Advantage filed a petition for review in the Chancery Court of Davidson County. The chancellor affirmed the commissioner's decision. Advantage appealed.[6]

---

[3]Fowler also testified that the manufacturing process at TAG was similar to that of C & P.

[4]The NCCI report stated:

Code 3507 applies to manufacturers of plate steel and material handling equipment. The manufacturing of plate steel equipment such as loader buckets, excavator buckets, couplers, hydraulic thumbs, ditch buckets, dozer blades and buckets are all used to store or move materials and have been assigned to Code 3507.

Code 3507 applies to the manufacture of heavy equipment and most closely describes this insured's business operations.

[5]At the end of the hearing, the Commissioner's designee, Assistant Commissioner Larry C. Knight, Jr., asked the parties to submit findings of fact and conclusions of law within 30 days of receiving the transcripts, and stated that an order would be issued 60 days after receiving the materials from the parties. *See also* Tenn. Code Ann. § 4-5-315(h). Advantage hand-delivered its proposed findings and conclusions on March 19, 2009. Liberty sent in its proposed findings and conclusions, via Federal Express, on March 19, 2009. The final order was issued over a year and six months later.

[6]The only parties to this appeal are Advantage and Liberty. The Department of Commerce and Insurance, through the Tennessee Attorney General, has opted not to participate in the defense of its decision. The Department's participation could have provided a perspective on this matter that would have been helpful to the court.

Standard of Review

Advantage maintains that the evidence does not support the Commissioner's decision or the ruling of the trial court, thereby implicating Tenn. Code Ann. § 4-5-322(h)(5), the substantial and material evidence standard.  Tenn. Code Ann. § 4-5-322(h)(5) states:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> . . .
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Substantial and material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 509 (Tenn. Ct. App. 2009) (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). It is "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* at 508 (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). We may overturn the administrative agency's factual findings "only if a reasonable person would necessarily reach a different conclusion based on the evidence." *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 265 (Tenn. 2009) (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001)).  The "substantial and material evidence" standard still requires a "searching and careful inquiry" that closely scrutinizes the agency's decision. *Freedom Broad. of TN, Inc. v. Tenn. Dep't of Revenue*, 83 S.W.3d 776, 781 (Tenn. Ct. App. 2002) (quoting *Sanifill of Tenn., Inc. v. Tenn. Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995)).

Analysis

The Commissioner found that the proper classification code was 3507.  Because the classification code is based on the operations of TAG, we must examine the operations at the plant.  NCCI described the operations as follows:

Based on the information provided by the insured, TAG Manufacturing Inc. is a manufacturer for various types of heavy equipment used in the construction, industrial and agricultural industries. The insured will produce attachments that are specific to most major brands of construction machinery. The attachments may include loader buckets, excavator buckets, couplers, hydraulic thumbs, ditch buckets, dozer blades and buckets.

The facility is separated into two buildings. The plant and the administrative building.

All manufacturing operations are conducted in the plant (Bldg. #2). The raw materials involved in the manufacturing process include steel plate, steel round bar, square tubing and square bar. The manufacturing process begins when a steel plate is placed on a conveyor and rolled into a CNC (Computer numerical control) laser cutting machine. The machine will cut the plate to specs programmed by a design engineer. Some of the cut pieces may be placed into the press brake machine which is used to form or roll the metal into various shapes. As the parts roll out of either the laser cutter or press brake, they may be drilled or punched before being separated and placed onto bins. The bins are placed into a "work cell" where assembly begins. The partially assembled attachment is sent to "fit up" where it is backed together then sent for final welding. The insured does not produce the teeth that are attached to the buckets. The teeth are produced by an outside contractor, they are sent to the insured who will weld them onto their finished attachments. Once the final welding is complete, the attachment is cleaned and painted.

The insured will also produce the parts needed to fit any attachments to a specific brand of equipment. These parts may include bushings and bearings. The parts are produced using a CNC turning center which will cut metal bar into precision sized parts. The square bar is placed onto one of two CNC milling machines. The milling machines will perform both small scale and larger scale precision cutting to produce highly accurate parts. These machines are referred to as "machine in a box." Once the bar is placed into the machine, a door must be closed to start any operation. The entire cutting process is encased within a box which protects the operator or any employee from possible injury.

According to the classification manual:

Code 3507 covers the manufacture of agricultural machinery such as

mowing machines, reapers and binders, hay loaders, potato planters, etc. The class also covers the manufacture of many other types of heavy machinery and equipment as evidenced by its cross-reference phraseologies.

The equipment involves the use of welding and machine shop apparatus including shears, punch presses, turret and engine lathes, drill presses, milling machines, grinders, boring mills and gear shapers. In general, castings are processed with the machine shop equipment, or steel framing is cut to size or other steel parts are shaped on power rolls. Assembling of parts is by welding or bolting.

The manual goes on to state that code 3507 is assigned to a variety of items, which are listed, "and other products in which the manufacturing or fabricating process involves the use of heavy-gauge metal, welding, riveting, bolting, etc."

Advantage maintains that code 3620 applies to TAG's operations. According to the manual:

Code 3620 is applied to insureds engaged in manufacturing various types of plate steel tanks, boilers, gas holders, whiskey stills, pressure vessels, smokestacks, heat exchanges, gas dehydrators, garbage dumpsters and air cleaning equipment. The materials used in the process include iron, steel, or stainless steel plates, channel iron, I-beams, round and square bars, etc. The materials are laid out, marked, power-sheared or torch-cut to size, power-braked or rolled and formed, drilled, punched and assembled into the final product by welding, grinding, cleaning and painting.

After a review of the record, including the testimony of Michael Fowler and Michael Welch and the exhibits, we conclude that there is substantial and material evidence to support the decision of the Commissioner. Like the chancellor, we find that the NCCI report is particularly persuasive proof. We affirm.

Costs of appeal are assessed against the appellant, Advantage, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

-6-